UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BLUE MONKEY BAR, LLC                          CIVIL ACTION

VERSUS                                        NO: 10-2947

JEFFERSON PARISH and JEFFERSON                SECTION: R(1)
PARISH COUNCIL


**ORDER AND REASONS**

In this zoning case, Blue Monkey Bar, LLC challenges its denial of a special use permit for a nightclub in Jefferson Parish on a number of constitutional and state law grounds. Defendants Jefferson Parish and the Jefferson Parish Council move to dismiss the complaint, or alternatively for summary judgment.[1] Because plaintiff's takings claim is not ripe, and because plaintiff has failed to show that the defendants' actions lack a rational basis, the Court GRANTS defendants' motion as to plaintiff's federal constitutional claims, and the Court dismisses plaintiff's state law claim without prejudice.

---

[1]     R. Doc. 10.

**I.    Background**

This case concerns Brian Brothers' attempt to acquire a zoning permit in order to establish a nightclub, to be called "Blue Monkey," at 2929 North Causeway Boulevard in Metairie, Louisiana.  The property is located in a district that is zoned "Business Core District BC-2."  Under Section 40-422(26) of the Jefferson Parish Code of Ordinances, a nightclub is a permitted use of property in BC-2 districts but must be approved by the Jefferson Parish Council as a "Special Permitted Use."  A "Special Permitted Use" is defined as

> a permitted use that would not be appropriate,
> generally or without restriction, throughout the zoning
> district in which it is conducted but which, if
> controlled as to number, area or relation to the
> neighborhood, might be deemed appropriate in some
> location within a district, if certain specific
> conditions and requirements are met.

Jefferson Parish Code of Ordinances, Section 40-3.  An application for special use must be filed with the Planning Department as set out in Section 40-761 before it goes before the Council.  Under Section 40-762, the Council shall not approve a special use unless the permit (1) "will not cause any diminution or depreciation of property values of any surrounding property or will not alter the essential character of the locality," (2) "will tend to preserve and advance the prosperity and general

2

welfare of the neighborhood and community," and (3) "will not impair an adequate supply of light and air, or increase substantially the congestion in the public streets, create a traffic hazard, or permit inadequate parking," or increase other listed dangers and nuisances.

In February 2010, after conferring with an official at the Jefferson Parish Planning Department, Brothers signed a lease on the property.[2]  Then, in April 2010, Brothers submitted an application to use the property as a nightclub to the Jefferson Parish Planning Department.[3]  The Planning Department prepared a report, which was distributed to the members of the Jefferson Parish Planning Advisory Board.  In that report, the Planning Department recommended that Brothers' application be approved, subject to certain conditions.[4]  Specifically, the report recommended that Blue Monkey be required to abide by certain interim regulations that applied to "Fat City," an area near the proposed Blue Monkey site where bars and nightclubs are strictly regulated.  Those regulations provide, among other things, that bars and nightclubs can remain open only until midnight on

---

[2]     R. Doc. 18, Ex. A-2.

[3]     R. Doc. 10, Ex. A.

[4]     R. Doc. 10, Ex. H.

3

weekdays and until 1:00 a.m. on weekends.[5]  On June 24 and July 22, 2010, Brothers participated in public hearings before the Planning Advisory Board.  The Board ultimately voted to concur in the Planning Department's recommendation that Brothers' application be approved, subject to the "Fat City rules."[6] Brothers continued to prepare the building for use as a nightclub despite the prospective imposition of those rules.

On August 18, 2010, the Jefferson Parish Council held a public hearing at which it addressed Brothers' application for a special use permit.[7]  At the hearing, Brothers spoke in favor of his application.  Three individuals spoke against the application – Jim Hudson, Steven Hebert, and Pat LeBlanc.  Hudson is the President and CEO of Omni Bank, which maintains its corporate headquarters adjacent to the property at issue.  He stated that a nightclub would not be consistent with the character of the businesses in the neighborhood and that it could damage property values.  Hebert, who operates a facility management company that does work for Omni Bank, expressed concern that the Blue Monkey would create too much demand for parking in the area.  Finally,

---

[5]     *Id.* at 3.

[6]     *Id.* at 5.

[7]     R. Doc. 10, Ex. B-1 (transcript of hearing).

4

LeBlanc, who is on the Board of Directors of Omni Bank and whose law office is located nearby, observed that the Blue Monkey would take the neighborhood in "the wrong direction," particularly in light of its proximity to Fat City.  Councilman Legasse then expressed concern over the parking situation in the neighborhood.  Brothers replied that there are bars in the neighborhood that operate twenty-four hours a day, but Councilwoman Lee-Sheng noted that those bars were grandfathered in but would not be allowed under the current zoning rules.  *See* Jefferson Parish Code of Ordinances, section 40-422(9) (permitting bars in BC-2 districts only in very limited circumstances, including as accessory uses to hotels and restaurants).  The Council decided by a vote of seven to zero to deny Brothers' application.[8]

On September 6, 2010, plaintiff brought this suit against Jefferson Parish and the Jefferson Parish Council under 42 U.S.C. § 1983.[9]  Plaintiff claims that defendants' denial of its application for a special use permit violates its procedural due process, substantive due process, and equal protection rights, constitutes an unconstitutional regulatory taking, and violates Article 6, § 17 of the Louisiana Constitution.  Plaintiff seeks

---

[8]      R. Doc. 10, Ex. L; R. Doc. 18, Ex. A.

[9]      R. Doc. 1.

damages and attorney's fees.  Defendants move to dismiss plaintiff's claims under Rules 12(b)(1) and (6), or alternatively for summary judgment under Rule 56.

## II.  Standard

### A.  Rule 56

Defendants contend that plaintiff has failed to state claims upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), and they move in the alternative for summary judgment under Fed. R. Civ. P. 56.  Because plaintiff and defendants present evidence outside the pleadings, the Court will adjudicate these claims under the summary judgment standard.  Fed. R. Civ. P. 12(d). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All

6

reasonable inferences are drawn in favor of the nonmoving party,
but "unsupported allegations or affidavits setting forth
'ultimate or conclusory facts and conclusions of law' are
insufficient to either support or defeat a motion for summary
judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216
(5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party
will bear the burden of proof at trial, the moving party "must
come forward with evidence that would 'entitle it to a [partial]
directed verdict if the evidence went uncontroverted at trial.'"
*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64
(5th Cir. 1991).  The nonmoving party can then defeat the motion
by either countering with sufficient evidence of its own, or
"showing that the moving party's evidence is so sheer that it may
not persuade the reasonable fact-finder to return a verdict in
favor of the moving party."  *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party
will bear the burden of proof at trial, the moving party may
satisfy its burden by merely pointing out that the evidence in
the record is insufficient with respect to an essential element
of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325.
The burden then shifts to the nonmoving party, who must, by
submitting or referring to evidence, set out specific facts

showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith for and on Behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

B.    *Rule 12(b)(1)*

Defendants also contend that the Court lacks subject matter jurisdiction over plaintiff's takings claim under Fed. R. Civ. P. 12(b)(1) because that claim is not ripe. *See Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 292 (5th Cir. 2006) (ripeness goes to the court's subject matter jurisdiction). Rule 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of the plaintiff's claim. Motions submitted under that rule allow a party to challenge the court's subject matter jurisdiction based upon the allegations on the face of the complaint. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996); *see also Lopez v. City of Dallas*, No. 03-2223, 2006 WL 1450420, at *2 (N.D. Tex. May 24, 2006). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

8

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro,* 74 F.3d at 659.  When examining a factual challenge to subject matter jurisdiction that does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver*, *Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).  Accordingly, the Court may consider matters outside the pleadings, such as testimony and affidavits.  *See Garcia*, 104 F.3d at 1261.  A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not necessarily prevent the plaintiff from pursuing the claim in another forum.  *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

## III. Analysis

A.   *Substantive Due Process*

9

The Fifth Circuit has "long insisted that review of
municipal zoning is within the domain of the states, the business
of their own legislatures, agencies, and judiciaries, and should
seldom be the concern of federal courts." *Unique Properties, LLC
v. Terrebonne Parish Consolidated Government*, No. 01-3503, 2004
WL 1278001, at *3 (E.D. La. June 8, 2004) (quoting *FM Properties
Operating Co. v. City of Austin*, 93 F.3d 167, 173-174 (5th Cir.
1996)).  Courts analyze substantive due process challenges to
zoning decisions under a rational basis standard.  Under that
standard, courts uphold a zoning decision if it has a rational
relationship to a legitimate government interest.  *See Hidden
Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1044 (5th Cir. 1998)
(placing utility hold on property to force repairs did not
violate substantive due process rights).  Rational basis review
is very lenient, and attacks against zoning decisions under this
test are rarely successful.  *Wood Marine Service*, 858 F.2d at
1066 (5th Cir. 1988) (citing *Shelton v. City of College Station*,
780 F.2d 475, 479 (5th Cir. 1986)).  A zoning decision will not
be declared unconstitutional unless it is "clearly arbitrary and
unreasonable, having no substantial relation to the public
health, safety, morals, or general welfare." *Shelton*, 780 F.2d
at 480 (quoting *Moore v. East Cleveland*, 431 U.S. 494, 498 n.6
(1977) (plurality opinion)).  If it is "at least debatable"

whether a rational basis for the decision exists, then there is no denial of substantive due process. *Shelton*, 780 F.2d at 483.

Zoning decisions, like the decision of the Jefferson Parish Council that plaintiff challenges, are entitled to particular deference when challenged in federal court because they are legislative in nature. *Wood Marine Service, Inc. v. City of Harahan*, 858 F.2d 1061, 1066 (5th Cir. 1988) (ordinance restricting use of Mississippi River batture did not violate substantive due process). A zoning decision violates substantive due process under the legislative model only if there is no "conceivable rational basis" upon which the government body might have based its decision. *Shelton*, 780 F.2d at 477. By contrast, under the adjudicative model of review, a court is limited to reviewing reasons that are stated on the record. *Id.*

The decision of the Jefferson Parish Council at issue is not an ordinance of general application, but the Fifth Circuit has made clear that a zoning decision is considered legislative even if it applies only to a particular property. In *South Gwinnett Venture v. Pruitt*, 491 F.2d 5 (5th Cir. 1974), which involved the denial of plaintiffs' applications to rezone particular properties, the court noted that local zoning is a "quasi-legislative procedure" and that there is "no viable distinction between zoning board functions involved in the adoption of a

comprehensive zoning plan and those exercised in the
reclassification of a piece of property under an existing plan."
*Id.* at 7.   Then, in *Shelton*, the Fifth Circuit held that the
denial of a request for a variance from a zoning ordinance
related to parking was legislative or quasi-legislative in nature
in nature and was therefore entitled to deference.   780 F.2d at
479-80; *see also Hill v. City of Seven Points*, 31 Fed.Appx. 835,
2002 WL 243261, at *18 (5th Cir. 2002) (denial of zoning variance
until ownership of property was conclusively determined was
quasi-legislative under *Shelton*); *Unique Properties*, 2004 WL
1278001, at *3 (denial of variance from engineering requirements
was quasi-legislative).   Although the denial of a zoning permit
may be considered adjudicative for certain purposes, *see Dolan v.
City of Tigard*, 512 U.S. 374, at 385 & 391 n.8 (1994), in this
case the Council was clearly charged with making a decision to
"preserve and advance the prosperity and general welfare of the
neighborhood and community."   Jefferson Parish Ordinances,
Section 40-762 (criteria for determining whether to approve
special permitted use).   "[D]eciding the best course for the
community," as opposed to "adjudicating the rights of contending
petitioners," is quintessentially legislative in nature.
*Shelton*, 780 F.2d at 480; *see also County Line Joint Venture v.
City of Grand Prairie*, 839 F.2d 1142, 1144 (5th Cir. 1988)

12

(elected council's decision is more likely to be considered legislative than the decision of an unelected municipal body); *cf. Vineyard Inv., LLC v. City of Madison*, No. 3:09CV354TSL-FKB, 2010 WL 4853302, at *8 (S.D. Miss. Nov. 23, 2010) (denial of building permit was adjudicative when city had no discretion to deny the permit under Mississippi state law). Thus, the Council's decision was legislative in nature, and the Court will accord it the appropriate deference.

The question of whether to apply the adjudicative model or the legislative model is not crucial in this case, however. The Court finds that the Council's decision to deny the permit was not arbitrary or irrational regardless of whether the Court is limited to reviewing the stated reasons for the Council's decision rather than considering any conceivable reason. Notably, even when the adjudicative model is applied, the state agency need show only that there was *a* rational basis for the decision, not that *the* basis for the decision was rational. *Shelton*, 780 F.2d at 484.

The transcript of the public hearing before the Council makes abundantly clear there were rational motivations that supported the Council's decision to deny plaintiff a special use permit. Individuals opposed to Brothers' application expressed concern that the nightclub would be out of character with the

13

businesses in the surrounding neighborhood, that it would generally lead the neighborhood in the wrong direction, that it would damage property values, and that it would lead to parking difficulties.[10]  "A governmental body's consideration of public opposition as a factor in determining a course of action is permissible if it is based on legitimate state concerns." *Unique Properties, LLC v. Terrebonne Parish Consolidated Government*, No. 01-3503, 2004 WL 1278001, at *7 (E.D. La. June 8, 2004) (public concerns about drainage and street flooding are legitimate).  The reasons discussed at the public hearing are substantially related to the general welfare of the community and satisfy the rational basis test.  *See Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 394-95 (1926) (preserving the residential character of the district is a rational basis for a zoning law); *Texas Manufactured Housing Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir. 1996) (maintaining property values is a legitimate government interest); *Baker v. St. Bernard Parish Council*, No. 08-1303, 2008 WL 4681373, at *10 (E.D. La. Oct. 21, 2008) (same); *Shelton*, 780 F.2d at 484 (control of parking is a legitimate purpose).  Plaintiff's demand for more specific evidence is not compatible with the lenient nature of rational

---

[10]    R. Doc. 10, Ex. B-1.

basis review.  Further, the Louisiana state court zoning cases cited by plaintiff do not carry the day because they are factually inapposite or do not apply the federal due process standard.  *See, e.g.*, *D'Argent Properties, LLC v. City of Shreveport*, No. 44,457-CA, p. 8-9 (La. App. 2 Cir. 6/24/09); 15 So.3d 334, 339-40 (overturning zoning decision on state law grounds because, among other reasons, the property owner proposed a "use by right" that satisfied all the relevant requirements, and there was no "proof" supporting public concerns about site plan).  Thus, the Court grants summary judgment to defendants on plaintiff's substantive due process claim.

B.   *Procedural Due Process*

Plaintiff also asserts that its procedural due process rights under the Fourteenth Amendment have been violated.  As a general rule, "once an action is characterized as legislative, procedural due process requirements do not apply."  *Jackson Court Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989).  "A local zoning decision is 'a quasi-legislative procedure, not subject to federal juridical consideration in the absence of arbitrary action.'"  *Id.* (quoting *South Gwinnett Venture v. Pruitt*, 491 F.2d 5, 7 (5th Cir. 1974)).  Plaintiff's argument that the Council's decision is arbitrary

under this formulation is a substantive due process argument,
which the Court has already rejected.  In *Shelton*, however, the
Fifth Circuit recognized that a zoning decision that is specific
to a particular property, though legislative in nature, may
trigger certain procedural rights "such as fair notice . . . and
perhaps certain participatory rights, to affected property
owners." 780 F.2d at 482; *see also County Line*, 839 F.2d at 1145
("circumstances may arise in which the zoning decision of a
governmental body . . . may require some procedural due
process").

     While certain procedures may be required under *Shelton*,
plaintiff's procedural due process claim is defective as a matter
of law.  To state such a claim, plaintiff must allege facts
sufficient to show (1) that it was deprived of a liberty or
property interest protected by the Due Process Clause, and (2)
that it was deprived of that interest without constitutionally
adequate process.  *LaCroix v. Marshall County*, No. 10-60410, 2011
WL 396476, *8 (5th Cir. Feb. 3, 2011).  As a leaseholder,
plaintiff has a property interest for purposes of the Due Process
Clause.  *See Department of Housing and Urban Development v.
Rucker*, 535 U.S. 125, 135 (2002) (citing *Greene v. Lindsey*, 456
U.S. 444 (1982)).  But plaintiff completely fails to specify what
procedures it should have been, but was not, granted.  Brothers

16

received notice of the public hearings before the Planning Advisory Board and the Jefferson Parish Council, and he attended those hearings and defended his plans for the Blue Monkey. Brothers does not argue that he lacked sufficient opportunities to be heard at those hearings, and he took advantage of those opportunities. Due process is "flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Plaintiff has made no showing that it received inadequate procedural protections under the circumstances. Thus, plaintiff's procedural due process claim is dismissed.

C.   *Equal Protection*

Plaintiff also contends that the requirement that the Blue Monkey abide by the "Fat City rules," and the Council's further decision to deny the special use permit altogether, violated its equal protection rights. The classification at issue here does not involve suspect classes or fundamental rights, so "judicial scrutiny under the Equal Protection Clause demands only a conceivable rational basis for challenged zoning decisions." *Rainwaters v. Jackson County*, 9 F.3d 102, 1993 WL 481561, at *2 (5th Cir. 1993); *see also Jackson Court Condominiums, Inc. v.*

17

*City of New Orleans*, 874 F.2d 1070, 1079 (5th Cir. 1989) (equal protection claim is subject to the same rational basis standard as a due process claim).  Plaintiff asserts that it is in a "class of one" under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), which requires it to show that it has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Id.* at 564 (holding that plaintiff stated claim that Village's demand for easement was "irrational and wholly arbitrary").

Plaintiff has identified three bars that, it asserts, are similarly situated to it and have received better treatment from defendants.  According to plaintiff, the 22nd Street Lounge, located less than one block away from the proposed Blue Monkey site, and the Caddyshack Bar and Capri Blu, both less than four blocks away, are not subject to the Fat City rules and therefore may stay open 24 hours a day and have as much or as little live entertainment as they like.  Plaintiff has provided a map that labels these bars as well as other establishments in the vicinity that serve alcohol.[11]

---

[11]    R. Doc. 18, Ex. A-1.

Plaintiff cannot state a claim based on the imposition of the Fat City rules because those rules were never ultimately imposed on plaintiff.  To the extent that plaintiff has an equal protection claim, it would stem from the Council's denial of the special use permit.  The Court finds, however, that plaintiff has not shown that there is a genuine issue of material fact as to that issue.

First, the Blue Monkey and the three bars Brothers has identified are not similarly situated.  Brothers applied for a special use permit to establish the Blue Monkey as a nightclub, while the establishments Brothers has identified are bars.  In BC-2 districts, bars are permitted only in very limited circumstances, including as accessory uses to hotels and restaurants.  Jefferson Parish Code of Ordinances, section 40-422(9).  Nightclubs, by contrast, must meet an entirely separate set of requirements, including Council approval of a special permitted use.  *Id.* section 40-422(9).

Further, even if the Blue Monkey and the three bars were similarly situated, the transcript of the public hearing before the Council makes clear that there is a rational basis for the difference in treatment.  At the hearing, when Brothers brought up the bars in the area, Councilwoman Lee-Sheng clarified that the bars were "grandfathered in" but would not be allowed under

19

current zoning rules.[12]  *See* Jefferson Parish Code of Ordinances, section 40-422(9) (limiting bars in BC-2 districts).  Allowing existing businesses to continue operating under a grandfather provision, while excluding new or recently established businesses, is a rational way to distinguish among otherwise similar establishments.  *See City of New Orleans v. Dukes*, 427 U.S. 297, 305 (1976) (upholding grandfather provision because "newer businesses were less likely to have built up substantial reliance interests in continued operation"); *Lindquist v. City of Pasadena, Tex.*, 656 F.Supp.2d 662, 696 (S.D. Tex. 2009) (application of a grandfather clause was not irrational for equal protection purposes).

Moreover, the bars plaintiff mentions may not pose all of the issues that were identified by the individuals who spoke in opposition to the Blue Monkey's permit application.  As discussed *supra*, a legislative body may take public opinion into account when that opinion is based on legitimate concerns, and the opposition to the Blue Monkey fits that description. Additionally, under Jefferson Parish Code of Ordinances, Section 40-3, a special permitted use is a use that may be appropriate "if controlled as to number, area or relation to the

---

[12]     R. Doc. 10, Ex. B-1, at 4.

neighborhood[.]"  Even if the Council were to allow a certain number of bars in the area, it does not follow that it would be irrational to limit their number - much less to limit the number of nightclubs, which fall into an entirely different category. This is particularly true in light of the concern Pat LeBlanc expressed at the hearing that allowing the Blue Monkey would move the neighborhood in the "wrong direction."[13]  LeBlanc was also concerned about allowing the Blue Monkey to operate near Fat City, where special limits on bars and nightclubs are in effect. This concern is undoubtedly rational, even though the Blue Monkey site is not within the boundaries of Fat City.  *See Yur Mar L.L.C. v. Jefferson Parish, et al*, No. 10-3293 (E.D. La. Jan. 20, 2011) (Fat City rules have the rational purpose of reducing blight and crime).  Finally, it is well-established that a legislative body may "attack a perceived problem piecemeal" so long as the classification is rationally related to a legitimate government objective.  *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 389 (5th Cir. 2001) (quoting *Jackson Court Condominiums*, 874 F.2d at 1079).  Plaintiff has not shown that there is a genuine issue of material fact as to whether the distinction the Council made between the Blue Monkey and nearby

---

[13]   R. Doc. 10, Ex. B-1, at 3.

21

bars was rational.  For these reasons, plaintiff's equal
protection claim must be dismissed.


D.   *Takings*

    Plaintiff also asserts a takings claim under the Fifth
Amendment, which states that "private property" shall not "be
taken for public use, without just compensation."  Before
reaching the merits of this claim, the Court must assess whether
the claim is ripe, an issue that goes to the Court's subject
matter jurisdiction.  *Urban Developers LLC v. City of Jackson,
Miss.*, 468 F.3d 281, 292 (5th Cir. 2006) (takings claim was
unripe because no final decision had been made regarding the
application of the flood-zone ordinance at issue).  "The Supreme
Court has adopted a two-prong test for ripeness under the Fifth
Amendment's Takings Clause, explaining that such claims are not
ripe until (1) the relevant governmental unit has reached a final
decision as to how the regulation will be applied to the
landowner; and (2) the plaintiff has sought compensation for the
alleged taking through whatever adequate procedures the state
provides."  *Id.* at 292-93 (citing *Williamson County Regional
Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985)).

    Under the second prong of the ripeness test, "if a State
provides an adequate procedure for seeking just compensation, the

property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson County*, 473 U.S. at 195.  This is because "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id.* at 194.  A state procedure is only "inadequate" if it "*almost certainly* will not justly compensate the claimant." *Samaad v. City of Dallas*, 940 F.2d 925, 934 (5th Cir. 1991) (emphasis in original) (finding that Texas's procedures for a property owner to obtain just compensation were adequate).  The plaintiff bears the burden of persuasion on this issue. *Id.*

The Louisiana Supreme Court has recognized an "inverse condemnation" action under Louisiana law. *State Through Dept. of Transp. & Dev. v. Chambers Inv. Co.*, 595 So.2d 598, 602 (La. 1992).  By filing such an action, a property owner can seek damages for an alleged taking.  A property owner must utilize an inverse condemnation procedure before filing a federal takings claim. *Williamson County*, 473 U.S. at 196-97.  The Louisiana inverse condemnation action is considered adequate for these purposes. *Bienville Quarters, LLC v. East Feliciana Parish Police Jury*, No. 07-158, 2010 WL 2653317, at *2 (M.D. La. June 25, 2010); *Baker v. St. Bernard Parish Council*, No. 08-1303, 2008 WL 4681373, at *6 (E.D. La. Oct. 21, 2008).  Plaintiff has not

shown that it has utilized the Louisiana inverse condemnation procedure, nor has it shown that the procedure is unavailable or inadequate.[14]  Thus, plaintiff's takings claim is not ripe, and the Court lacks subject matter jurisdiction over that claim.

E.   *State Law Claim under Article 6, § 17 of the Louisiana Constitution*

Under 28 U.S.C. § 1367(c), the Court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  In this case, the Court has dismissed all claims over which it has, or purportedly has, original jurisdiction.  "Ordinarily, when the federal claims are dismissed before trial, the pendent state claims should be dismissed as well." *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).  This case has not proceeded far in this Court, and exercising supplemental jurisdiction would not serve the values of judicial economy, convenience, fairness, and comity.  *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy,

---

[14]    An inverse condemnation proceeding is subject to a three-year prescriptive period under Louisiana law.  La. R.S. 13:5111(A).

convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims."). Therefore, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claim.


**IV.  Conclusion**

　　For the foregoing reasons, defendants' motion is GRANTED. Plaintiff's due process and equal protection claims are DISMISSED WITH PREJUDICE, plaintiff's takings claim is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction, and plaintiff's state law claim is DISMISSED WITHOUT PREJUDICE.


　　New Orleans, Louisiana, this <u>30th</u> day of March, 2011.


　　　　　　　　　　_____
　　　　　　　　　　　　SARAH S. VANCE
　　　　　　　　　UNITED STATES DISTRICT JUDGE

25